UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REBA PURDESSY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BOJANGLES', INC., WILLIAM A. KUSSELL, JAMES R. KIBLER, STEVEN J. COLLINS, JOHN E. CURRIE, CHRISTOPHER J. DOUBRAVA, TOMMY L. HADDOCK, ROBERT F. HULL, JR., STARLETTE JOHNSON, MARK A. ROWAN, and STEVEN M. TADLER,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>2. **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

Reba Purdessy ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is a class action brought by Plaintiff on behalf of herself and the other shareholders of Bojangles', Inc. ("Bojangles" or the "Company"), except Defendants (defined below) and their affiliates, against Bojangles and the members of Bojangles' board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between Bojangles, on the one hand, and Durational Capital Management LP ("Durational"), The

Jordan Company, L.P. ("TJC"), TEI Investment Pte. Ltd. ("TEI"), Walker Parent, Inc. ("Walker"), and Walker Merger Sub, Inc. ("Merger Sub") (collectively, the "Buyer Group") on the other.

2.      On November 5, 2018, the Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with the Walker, pursuant to which, Bojangles shareholders will receive $16.10 in cash for each share of Bojangles stock they own (the "Merger Consideration").

3.      On December 10, 2018, the Board authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act that recommends shareholders vote in favor of the Proposed Merger.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading. Specifically, the Proxy contains materially incomplete and misleading information concerning: (i) the valuation analyses performed by the Company's financial advisors, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch") and Houlihan Lokey Capital, Inc. ("Houlihan Lokey" and together with BofA Merrill Lynch, the "Financial Advisors"), in support of their fairness opinion; and (ii) the background of the Proposed Merger.

5.      It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the special meeting of shareholders to vote on the Proposed Merger currently scheduled for January 10, 2019 (the "Shareholder Vote"), so that they can properly exercise their corporate suffrage rights.

6. For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Bojangles shareholders, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Bojangles' common stock trades on the Nasdaq stock

exchange, which is headquartered in this District, rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of Bojangles common stock and held such stock since prior to the wrongs complained of herein.

11. Defendant Bojangles is a Delaware corporation with its principal offices located at 9600 Southern Pine Boulevard, Suite J, Charlotte, North Carolina 28273. The Company is a restaurant operator and franchisor serving customers southern food, including breakfast all day, biscuits, fried chicken, and sides. Bojangles' common stock trades on the Nasdaq under the symbol "BOJA."

12. Individual Defendant William A. Kussell is director of Bojangles and Chairman of the Board.

13. Individual Defendant James R. Kibler is a director of Bojangles and the Interim President and Chief Executive Officer of the Company.

14. Individual Defendant Steven J. Collins is, and has been at all relevant times, a director of Bojangles.

15. Individual Defendant John E. Currie is, and has been at all relevant times, Lead Director of Bojangles.

16. Individual Defendant Christopher J. Doubrava is, and has been at all relevant times, a director of Bojangles.

17. Individual Defendant Tommy L. Haddock is, and has been at all relevant times, a director of Bojangles.

18. Individual Defendant Robert F. Hull, Jr. is, and has been at all relevant times, a director of Bojangles.

19. Individual Defendant Starlette Johnson is, and has been at all relevant times, a director of Bojangles.

20. Individual Defendant Mark A. Rowan is, and has been at all relevant times, a director of Bojangles.

21. Individual Defendant Steven M. Tadler is, and has been at all relevant times, a director of Bojangles.

22. The parties identified in ¶¶ 11-21 are collectively referred to as the "Defendants."

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Bojangles common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

24. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of the close of business on December 6, 2018, Bojangles had 37,548,674 shares of common stock issued and outstanding held by hundreds to thousands of individuals and entities—the actual number of public shareholders of Bojangles will be ascertained through discovery;

(b) The holders of these shares are believed to be geographically dispersed through the United States;

(c)     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

      i. Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

      ii. Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

      iii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Merger as presently anticipated;

(d)     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**I.     Background and the Proposed Merger**

25.     Bojangles, incorporated on June 28, 2011, is a restaurant operator and franchisor. The Company offers food made from its Southern recipes. The Company's menu includes its made-

from-scratch, buttermilk biscuits baked fresh every 20 minutes; its fresh, never-frozen bone-in fried chicken; its fixin's; its Bo-Smart menu featuring items, such as salads, grilled chicken sandwiches, roasted chicken bites, and fat-free green beans; its freshly baked sweets menu; and its Legendary Iced Tea. The Company's food is offered a la carte and in combos. The Company's chicken, fixin's, biscuits and Legendary Iced Tea may also be ordered in boxes or family meals, and larger combinations may be offered as tailgate specials.

26. Durational is not a party to the merger agreement, but certain funds managed by Durational have committed to capitalize Walker with up to $145 million of equity financing in connection with the Proposed Merger pursuant to, and subject to the terms and conditions of, an equity commitment letter. Durational is an investment firm based in New York that invests in high quality consumer companies. Durational approaches its investments with a strategic mindset and focuses on driving long-term value creation through partnership with top tier management teams and actively supporting management to drive operational improvements. The firm was founded in 2017, and its investment professionals have extensive experience investing in the consumer sector.

27. TJC is not a party to the merger agreement, but certain funds managed by TJC have committed to capitalize Walker with up to $145 million of equity financing in connection with the Proposed Merger pursuant to, and subject to the terms and conditions of, an equity commitment letter. TJC is a private equity firm specializing in later stage, mature, emerging growth, turnarounds, traditional leverage buyouts, recapitalizations, restructuring, public-to-private transactions, PIPEs, bridge financing, industry consolidation, and growth capital transactions of middle market companies. The firm seeks to invest in a wide range of sectors. The firm prefers to take a majority stake in its portfolio companies. It seeks to act as a co-investor in its portfolio companies. TJC was founded in 1982 and is based in New York, New York.

28.     TEI is not a party to the merger agreement, but has committed to capitalize Walker with up to $100 million of equity financing in connection with the Proposed Merger pursuant to, and subject to the terms and conditions of, an equity commitment letter.

29.     Walker is a Delaware corporation indirectly owned by Durational, TJC, and TEI. Merger Sub is a wholly owned subsidiary of Walker.

30.     November 6, 2018, Bojangles issued a press release to announce the Proposed Merger stating, in relevant part, as follows:

> **Bojangles', Inc. to be Acquired by Durational Capital Management and The Jordan Company for $16.10 Per Share**
>
> CHARLOTTE, N.C., Nov. 06, 2018 (GLOBE NEWSWIRE) -- Bojangles', Inc. (Bojangles', the "Company") (NASDAQ: BOJA) today announced that it has entered into a definitive agreement to be acquired by Durational Capital Management LP and The Jordan Company, L.P. Under the terms of the agreement, Durational Capital Management LP and The Jordan Company, L.P. will acquire the Company in an all cash transaction. Bojangles' stockholders will receive $16.10 per share, representing a 39% premium to the closing share price of February 12, 2018, a day prior to initial speculation regarding a potential transaction involving Bojangles' and a premium of approximately 30% to the 90-day volume weighted average price ending on February 12, 2018. The offer represents a 15% premium to the closing share price of September 27, 2018, a day prior to a published report that Bojangles' is exploring strategic alternatives.
>
> **Transaction Details**
> The acquisition, which has been unanimously approved by Bojangles' Board of Directors, is subject to stockholder approval and other customary closing conditions. Concurrently with the execution of the acquisition agreement, Bojangles' majority stockholder executed a customary voting agreement whereby it agreed (among other things) to vote its shares in favor of the acquisition. The transaction is expected to be completed in the first quarter of fiscal year 2019. Upon closing of the transaction, Bojangles' will continue to be operated as an independent, privately-held company and will remain based in Charlotte, N.C.
>
> **Statements by Randy Kibler and William Kussell, Bojangles'**
> "For the Bojangles' family of employees, franchisees, and our customers, today's announcement represents an exciting next phase for this great brand. The new ownership group is committed to maintaining the qualities of this brand that have sustained it for over four decades," said Randy Kibler, Bojangles' Interim President and CEO.

"In consultation with our outside advisors, the Board of Directors has been evaluating several strategic alternatives over the last several months. We are confident that this agreement offers a promising opportunity to realize the highest value for our stockholders while providing a strong path forward for the Bojangles'® brand, its employees, franchisees, and loyal customers," said William A. Kussell, Director and Non-Executive Chairman of Bojangles'.

**Statements by Durational Capital Management and The Jordan Company**
"Bojangles' is an iconic brand with an authentic Southern heritage and a deeply loyal following," said Eric Sobotka, Managing Partner at Durational Capital Management. "We have admired the brand and its high quality and craveable food for years, and we look forward to partnering closely with the employees and franchisees to drive its future growth and continued success."

"Bojangles' has a differentiated offering, a talented team of employees and dedicated franchisees that are committed to their businesses and their communities," said Ian Arons, Partner at The Jordan Company. "We are excited to invest in a company with such great growth potential, and we believe that with our and our partners' support, Bojangles' will be well-positioned for long-term success."

**Advisors**
BofA Merrill Lynch acted as financial advisor and Shearman & Sterling LLP acted as legal counsel to Bojangles' and its Board of Directors. Houlihan Lokey also acted as financial advisor to Bojangles' and its Board of Directors.

Citigroup Global Markets Inc. served as financial advisor to the consortium and, together with KKR Capital Markets LLC, provided fully committed financing in support of the transaction. Akin, Gump, Strauss & Feld LLP, Kirkland & Ellis LLP, and Seyfarth Shaw LLP acted as legal counsel in connection with the transaction.

**Cancellation of Third Fiscal Quarter 2018 Conference Call**
Bojangles' also announced that it will no longer hold its previously scheduled third fiscal quarter 2018 conference call and webcast on Thursday, November 8, 2018 at 5:00 p.m. Eastern Time.

The Company will still issue an earnings press release with third fiscal quarter 2018 financial results after the market close on Thursday, November 8, 2018, and will file its quarterly report on Securities and Exchange Commission (SEC) Form 10-Q on or before November 9, 2018.

**About Bojangles', Inc.**
Bojangles', Inc. is a highly differentiated and growing restaurant operator and franchisor dedicated to serving customers high-quality, craveable food made from our Southern recipes, including breakfast served All Day, Every Day. Founded in

1977 in Charlotte, N.C., Bojangles'® serves menu items such as made-from-scratch biscuit breakfast sandwiches, delicious hand-breaded bone-in chicken, flavorful fixin's (sides) and Legendary Iced Tea®. At July 1, 2018, Bojangles' had 766 system-wide restaurants, of which 325 were company-operated and 441 were franchised restaurants, primarily located in the Southeastern United States. For more information, visit www.bojangles.com or follow Bojangles' on Facebook, Instagram and Twitter.

**About Durational Capital Management LP**
Based in New York, Durational Capital Management LP is an investment firm that invests in high quality consumer companies. Durational approaches its investments with a strategic mindset and focuses on driving long-term value creation through partnership with top tier management teams and actively supporting management to drive operational improvements. The firm was founded in 2017, and its investment professionals have extensive experience investing in the consumer sector. For more information, visit: www.durational.com.

**About The Jordan Company, L.P.**
The Jordan Company, founded in 1982, is a middle-market private equity firm that has managed funds with original capital commitments in excess of $11 billion since 1987 and a 36-year track record of investing in and contributing to the growth of many businesses across a wide range of industries including Industrials, Transportation & Logistics, Healthcare, Consumer, and Telecom, Technology & Utility. The senior investment team has been investing together for over 20 years and it is supported by the Operations Management Group, which was established in 1988 to initiate and support operational improvements in portfolio companies. Headquartered in New York, TJC also has an office in Chicago. For more information, visit: www.thejordancompany.com..

31.    The Merger Consideration represents inadequate compensation for Bojangles shareholders. Indeed, $16.10 falls completely outside the range of fairness determined by *Discounted Cash Flow Analysis* performed by Houlihan Lokey. It is therefore imperative that shareholders receive the material information (detailed below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights, cast an informed vote on the Proposed Merger, and/or seek appraisal.

**II.    The Proxy Is Materially Incomplete and Misleading**

32.    On December 10, 2018, Bojangles filed the Proxy with the SEC in connection with the Proposed Merger. The Proxy solicits the Company's shareholders to vote in favor of the

10

Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed regarding whether to vote on Proposed Merger or to exercise their appraisal rights, in violation of Sections 14(a) and 20(a) of the Exchange Act.

33. First, in summarizing the *Discounted Cash Flow* ("DCF") Analyses prepared by the Financial Advisors, the Proxy fails to disclose the following key information used in their analyses: (i) whether the "Free Cash Flow[s]" disclosed in the projections table on page 65 of the Proxy are the same as the standalone unlevered, after-tax free cash flows used the in the DCF analyses—and if not, then the cash flows used in both DCF analyses; (ii) the inputs and assumptions underlying BofA Merrill Lynch's calculation of the discount rate range of 9.0% to 11.0%, including the WACC and CAPM components; (iii) the inputs and assumptions underlying Houlihan Lokey's calculation of the discount rate range of 8.5% to 9.5%, including the WACC and CAPM components; (iv) the inputs and assumptions underlying BofA Merrill Lynch's selection of the 2.0% to 3.0% perpetuity growth rate used to derive the terminal values; (v) the inputs and assumptions underlying Houlihan Lokey's selection of the 8.0x to 9.0x exit multiples used to derive the terminal values; and (vi) the actual terminal values calculated for each DCF analysis.

34. These key inputs are material to Bojangles shareholders, and their omission renders the summary of the DCF analyses incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow

analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" Id. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

35. The above omitted information is of particular import here, given the drastically different findings of each financial advisor. Using a 10% midpoint discount rate varying a full percent in each direction, Bank of America Merrill Lynch found the Merger Consideration to be just barely within the range of fairness. Using a 9% midpoint discount rate varying a half of a percent in each direction, Houlihan Lokey found the Merger Consideration to fall *outside* the range of fairness entirely. In other words, Houlihan Lokey found the Merger Consideration to be *unfair*. Without the above-omitted information Bojangles shareholders are misled as to the reasonableness or reliability of the Financial Advisors' DCF analyses, and unable to fairly assess the fairness of the Proposed Merger. As such, these material omissions render the summaries of the *Discounted Cash Flow* Analyses included in the Proxy misleading.

36. Second, with respect to BofA Merrill Lynch's *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples for each transaction utilized in the analysis. A fair summary of a transactions analysis requires the disclosure of the individual multiples for each transaction a financial advisor selects—as illustrated in the summary provided for Houlihan Lokey's corresponding analysis and BofA Merrill Lynch's *Selected Publicly Traded Companies Analysis*. Merely providing the range of values, or mean or media, that a banker applied—such as the summary on page 53 of the Proxy—is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down Bojangles' implied value. Accordingly, the omission of this material information renders the summary of BofA Merrill Lynch's *Selected Precedent Transactions Analysis* included in the Proxy misleading.

37. Third, with respect to the *Background of the Transaction*, the Proxy states that Bojangles and multiple parties entered into confidentiality agreements, but fails to disclose whether such agreements contained a standstill provision and/or a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect. On page 9, the Proxy states "Bojangles' has agreed that it and its subsidiaries will not modify, amend, terminate, waive, release, or fail to enforce any provisions of, any "standstill" provisions (including provisions that restrict or prohibit the purchase of shares of Bojangles' common stock or the making or soliciting of any offer or proposal) of any contract to which Bojangles' or any of its subsidiaries is a party relating to an acquisition proposal." This indicates that not only standstill provisions, but also DADWs were in effect after the signing of the Merger Agreement.

38. Accordingly, the express communication of the existence of such provisions is material to Bojangles shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal. The failure to plainly disclose the existence of DADW provisions creates the false impression that any of the parties who signed confidentiality agreements could have made a superior proposal. If those confidentiality agreements contained DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the descriptions of the confidentiality agreements the Company entered into in the *Background of the Transaction* section of the Proxy misleading. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

39. Fourth and finally, the Proxy indicates on pages 67-69 that certain of Bojangles' executive officers—M. John Jordan (Chief Financial Officer, Senior Vice President of Finance, and Treasurer), Laura Roberts (Vice President, General Counsel, Secretary, and Compliance Officer), and Jayson Romeo (Vice President and Chief of Staff)—entered into Amended and Restated Employment Agreements and/or Retention Plans, "[t]he purpose of [which] is to reward certain key employees for their contributions to the Company and retain them through and following the consummation of the merger." Proxy at 68. However, the Proxy fails to disclose any negotiations between the Bojangles, or its officers or directors, and the Buyer Group concerning this continued, post-merger employment. Continued employment, and the negotiation thereof, represents a conflict of interest of which Bojangles shareholders must be made aware. Once a proxy statement travels down the road of partial disclosure of the history leading up to a merger

the duty of disclosure requires Defendants to provide shareholders with an accurate, full, and fair characterization of those historic events. Accordingly, the failure to disclose complete and accurate details informing shareholders of the precise timing and nature of the employment negotiations renders the statements on pages 67-69 of the Proxy describing these agreements and the summary of the sales process misleading.

40. In sum, the omission the of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger or seek appraisal, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

45. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding: (i) the valuation analyses performed by the Financial Advisors; and (ii) the background of the Proposed Merger.

46. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

47. Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed

Merger. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections for Bojangles and the details surrounding discussions with other interested parties and the Financial Advisors. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review the Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48. Each of the Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it—which they were required to do carefully. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of Bojangles' financial projections.

49. Bojangles is also deemed negligent as a result of the Individual Defendants negligence in preparing and reviewing the Proxy.

50. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and will deprive them of their right to cast an informed vote and/or seek appraisal if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff

be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Bojangles within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Bojangles, and participation in and/or awareness of the Bojangles' operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Bojangles, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Bojangles, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Merger. The Proxy at issue contains the

unanimous recommendation of the Board to approve the Proposed Merger. The Individual Defendants were thus directly involved in the making of the Proxy.

55. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

58. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands relief in her favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and her counsel as Class Counsel;

B.   Preliminarily enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Merger, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.   Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.   Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.   Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: December 13, 2018   Respectfully submitted,

*/s/ Juan E. Monteverde*
Juan E. Monteverde

**MONTEVERDE & ASSOCIATES PC**
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*